**THE ROSEN LAW FIRM, P.A.**
Phillip Kim, Esq. (PK 9384)
Laurence M. Rosen, Esq. (LR 5733)
275 Madison Ave., 34th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
  lrosen@rosenlegal.com

*Counsel for Plaintiff*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| KHALED EL MAWARDY, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ALPHABET, INC., LAWRENCE PAGE, and RUTH PORAT,<br><br>Defendants. | Case No:<br><br>CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS<br><br>JURY TRIAL DEMANDED |

Plaintiff Khaled El Mawardy ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, inter alia, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Alphabet, Inc. ("Alphabet" or the "Company"), analysts' reports and advisories about the Company, and information

1

readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired Alphabet securities between April 24, 2018 and October 10, 2018, both dates inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act (15 U.S.C. §78aa).

4. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the alleged misstatements entered and the subsequent damages took place in this judicial district.

5. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6. Plaintiff, as set forth in the accompanying Certification, purchased common shares of Alphabet at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosure.

7. Defendant Alphabet provides online advertising services in the United States and internationally. Alphabet is incorporated in Delaware, and its principal executive offices are located in California. Alphabet's common stock trades on the NASDAQ Global Select market ("NASDAQ"). Alphabet's Class A common shares trade under the ticker symbol "GOOGL." Its Class C common shares trade under the ticker symbol "GOOG."

8. Defendant Lawrence Page ("Page") co-founded Alphabet and has served as the Company's Chief Executive Officer ("CEO") since October 2015 and a member of the Company's Board of Directors.

9. Defendant Ruth Porat ("Porat") has served as the Company's Chief Financial Officer ("CFO") and as a Senior Vice President since October 2015.

10. Defendants Page and Porat are collectively referred to herein as the "Individual Defendants."

11. Each of the Individual Defendants:

    (a)    directly participated in the management of the Company;

    (b)    was directly involved in the day-to-day operations of the Company at the highest levels;

    (c)    was privy to confidential proprietary information concerning the Company and its business and operations;

(d) was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e) was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(f) was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g) approved or ratified these statements in violation of the federal securities laws.

12. The Company is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

13. The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to the Company under *respondeat superior* and agency principles.

14. The Company and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

15. Alphabet operates through its Google and Other Bets segments. The Google segment includes principal Internet products, such as Ads, Android, Chrome, Commerce, Google Cloud, Google Maps, Google Play, Hardware, Search, and YouTube, as well as technical infrastructure

and newer efforts, including Virtual Reality. This segment offers digital content, enterprise cloud services, and hardware products, as well as other miscellaneous products and services.

16. On February 6, 2018, Alphabet filed an annual report on Form 10-K for the year ended December 31, 2017 (the "2017 10-K") with the SEC, which provided the Company's annual financial results and position. The 2017 10-K was signed by Defendants Page and Porat.

17. The 2017 10-K listed certain risks associated with Alphabet's business. The 2017 10-K provided that security breaches could result "in the improper use and disclosure of user data[:]" stating in relevant part:

> From time to time, concerns have been expressed about whether our products, services, or processes compromise the privacy of users, customers, and others. Concerns about our practices with regard to the collection, use, disclosure, or security of personal information or other privacy related matters, even if unfounded, could damage our reputation and adversely affect our operating results.
>
> Our products and services involve the storage and transmission of users' and customers' proprietary information, and theft and security breaches expose us to a risk of loss of this information, improper use and disclosure of such information, litigation, and potential liability. Any systems failure or compromise of our security that results in the release of our users' data, or in our or our users' ability to access such data, could seriously harm our reputation and brand and, therefore, our business, and impair our ability to attract and retain users. We expect to continue to expend significant resources to maintain state-of-the-art security protections that shield against theft and security breaches.
>
> We experience cyber attacks of varying degrees on a regular basis. Our security measures may also be breached due to employee error, malfeasance, system errors or vulnerabilities, including vulnerabilities of our vendors, suppliers, their products, or otherwise. Such breach or unauthorized access, increased government surveillance, or attempts by outside parties to fraudulently induce employees, users, or customers to disclose sensitive information in order to gain access to our data or our users' or customers' data could result in significant legal and financial exposure, damage to our reputation, and a loss of confidence in the security of our products and services that could potentially have an adverse effect on our business. Because the techniques used to obtain unauthorized access, disable or degrade service, or sabotage systems change frequently, become more sophisticated, and often are not recognized until launched against a target, we may be unable to anticipate these techniques or to

5

implement adequate preventative measures. Additionally, cyber attacks could also compromise trade secrets and other sensitive information and result in such information being disclosed to others and becoming less valuable, which could negatively affect our business. If an actual or perceived breach of our security occurs, the market perception of the effectiveness of our security measures could be harmed and we could lose users and customers.

**Materially False and Misleading
Statements Issued During the Class Period**

18. On April 23, 2018, during aftermarket hours, Alphabet filed a quarterly report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended March 31, 2018 (the "Q1 2018 10-Q"). The Q1 2018 10-Q was signed by Defendant Porat. The Q1 2018 10-Q contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Page and Porat, attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

19. In the Q1 2018 10-Q, the Company stated, in relevant part:

> Our operations and financial results are subject to various risks and uncertainties, including those described in Part I, Item 1A, "Risk Factors" in our Annual Report on Form 10-K for the year ended December 31, 2017, which could adversely affect our business, financial condition, results of operations, cash flows, and the trading price of our common and capital stock. There have been no material changes to our risk factors since our Annual Report on Form 10-K for the year ended December 31, 2017.

20. On July 24, 2018, Alphabet filed a quarterly report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended June 30, 2018 (the "Q2 2018 10-Q"). The Q2 2018 10-Q was signed by Defendant Porat. The Q2 2018 10-Q contained signed SOX certification by Defendants Page and Porat attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and disclosure of all fraud.

21. In the Q2 2018 10-Q, the Company stated, in relevant part:

> Our operations and financial results are subject to various risks and uncertainties, including those described in Part I, Item 1A, "Risk Factors" in our Annual Report on Form 10-K for the year ended December 31, 2017, which could adversely affect our business, financial condition, results of operations, cash flows, and the trading price of our common and capital stock. There have been no material changes to our risk factors since our Annual Report on Form 10-K for the year ended December 31, 2017.

22. The "Risk Factors" cited in Alphabet's Q1 2018 10-Q and Q2 2018 10-Q and described in Alphabet's 2017 10-K, offered only non-specific representations with respect to data security.

23. On May 25, 2018, Alphabet updated its Privacy Policy on its website. The Privacy Policy advised Google users, in part, about the following regarding data sharing:

> We do not share your personal information with companies, organizations, or individuals outside of Google except in the following cases:
>
> With your consent
>
> \* \* \*
>
> With domain administrators
>
> \* \* \*
>
> For external processing
>
> \* \* \*
>
> For legal reasons
>
> \* \* \*

24. The Privacy Policy also advised Google users of the following pertaining to data security:

> ***All Google products are built with strong security features that continuously protect your information***. The insights we gain from maintaining our services help us detect and automatically block security threats from ever reaching you. ***And if we do detect something risky that we think you should know about, we'll notify you and help guide you through steps to stay better protected.***
>
> We work hard to protect you and Google from unauthorized access, alteration, disclosure, or destruction of information we hold, including:
>
> - We use encryption to keep your data private while in transit

7

- We offer a range of security features, like Safe Browsing, Security Checkup, and 2 Step Verification to help you protect your account
- We review our information collection, storage, and processing practices, including physical security measures, to prevent unauthorized access to our systems
- We restrict access to personal information to Google employees, contractors, and agents who need that information in order to process it. Anyone with this access is subject to strict contractual confidentiality obligations and may be disciplined or terminated if they fail to meet these obligations.

(Emphasis added.)

25. The statements contained in ¶¶18-24 were materially false and/or misleading because they misrepresented and/or failed to disclose the following adverse facts pertaining to the Company's business, operational and financial results, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) Google exposed the private data of hundreds of thousands of Google+ social network users; (2) Google actively concealed this data breach for several months; (3) this conduct violated Google's purported data privacy and security policies; (4) discovery of the foregoing conduct could foreseeably subject Alphabet to heightened regulatory scrutiny; and (5) as a result, Alphabet's public statements were materially false and misleading at all relevant times.

## **THE TRUTH BEGINS TO EMERGE**

26. On October 8, 2018, the Wall Street Journal published an article entitled "Google Exposed User Data, Feared Repercussions of Disclosing to Public," reporting in part, that:

> ***Google exposed the private data of hundreds of thousands of users of the Google+ social network and then opted not to disclose the issue this past spring, in part because of fears that doing so would draw regulatory scrutiny and cause reputational damage***, according to people briefed on the incident and documents reviewed by The Wall Street Journal.

*As part of its response to the incident, the Alphabet Inc. GOOGL -3.45% unit on Monday announced a sweeping set of data privacy measures that include permanently shutting down all consumer functionality of Google+.* The move effectively puts the final nail in the coffin of a product that was launched in 2011 to challenge Facebook Inc. FB -3.20% and is widely seen as one of Google's biggest failures.

*A software glitch in the social site gave outside developers potential access to private Google+ profile data between 2015 and March 2018, when internal investigators discovered and fixed the issue, according to the documents and people briefed on the incident. A memo reviewed by the Journal prepared by Google's legal and policy staff and shared with senior executives warned that disclosing the incident would likely trigger "immediate regulatory interest" and invite comparisons to Facebook's leak of user information to data firm Cambridge Analytica.*

*Chief Executive Sundar Pichai was briefed on the plan not to notify users after an internal committee had reached that decision, the people said.*

The closure of Google+ is part of a broader review of privacy practices by Google that has determined the company needs tighter controls on several major products, the people said. In its announcement Monday, the company said it is curtailing the access it gives outside developers to user data on Android smartphones and Gmail.

*The episode involving Google+, which hasn't been previously reported, shows the company's concerted efforts to avoid public scrutiny of how it handles user information, particularly at a time when regulators and consumer privacy groups are leading a charge to hold tech giants accountable for the vast power they wield over the personal data of billions of people.*

The snafu threatens to give Google a black eye on privacy after public assurances that it was less susceptible to data gaffes like those that have befallen Facebook. It may also complicate Google's attempts to stave off unfavorable regulation in Washington. Mr. Pichai recently agreed to testify before Congress in the coming weeks.
"Whenever user data may have been affected, we go beyond our legal requirements and apply several criteria focused on our users in determining whether to provide notice," a Google spokesman said in a statement.

In weighing whether to disclose the incident, the company considered "whether we could accurately identify the users to inform, whether there was any evidence of misuse, and whether there were any actions a developer or user could take in response," he said. "None of these thresholds were met here."

The internal memo from legal and policy staff says the company has no evidence that any outside developers misused the data but acknowledges it has no way of knowing for sure. The profile data that was exposed included full names, email addresses, birth dates, gender, profile photos, places lived, occupation and relationship status; it didn't include phone numbers, email messages, timeline posts, direct messages or any other type of communication data, one of the people said.

* * *

*In March of this year, Google discovered that Google+ also permitted developers to retrieve the data of some users who never intended to share it publicly, according to the memo and two people briefed on the matter. Because of a bug in the API, developers could collect the profile data of their users' friends even if that data was explicitly marked nonpublic in Google's privacy settings, the people said.*

*During a two-week period in late March, Google ran tests to determine the impact of the bug, one of the people said. It found 496,951 users who had shared private profile data with a friend could have had that data accessed by an outside developer, the person said.* Some of the individuals whose data was exposed to potential misuse included paying users of G Suite, a set of productivity tools including Google Docs and Drive, the person said. G Suite customers include businesses, schools and governments.

Because the company kept a limited set of activity logs, it was unable to determine which users were affected and what types of data may potentially have been improperly collected, the two people briefed on the matter said. *The bug existed since 2015, and it is unclear whether a larger number of users may have been affected over that time.*

Google believes up to 438 applications had access to the unauthorized Google+ data, the people said. Strobe investigators, after testing some of the apps and checking to see if any of the developers had previous complaints against them, determined none of the developers looked suspicious, the people said. *The company's ability to determine what was done with the data was limited because the company doesn't have "audit rights" over its developers, the memo said. The company didn't call or visit with any of the developers, the people said*.

The question of whether to notify users went before Google's Privacy and Data Protection Office, a council of top product executives who oversee key decisions relating to privacy, the people said.

Internal lawyers advised that Google wasn't legally required to disclose the incident to the public, the people said. Because the company didn't know what developers may have what data, the group also didn't believe notifying users would give any actionable benefit to the end users, the people said.

> The memo from legal and policy staff wasn't a factor in the decision, said a person familiar with the process, but reflected internal disagreements over how to handle the matter.
>
> ***The document shows Google officials felt that disclosure could have serious ramifications***. Revealing the incident would likely result "in us coming into the spotlight alongside or even instead of Facebook despite having stayed under the radar throughout the Cambridge Analytica scandal," the memo said. It "almost guarantees Sundar will testify before Congress."
>
> * * *

(Emphasis added.)

27. That same day, the Company announced in a blog post that it was shutting down Google+.

28. On this news, shares of Alphabet's Class A shares (GOOGL) fell $22.66 or nearly 2% over the next two trading days to close at $1,145.17 on October 9, 2018. Shares of Alphabet's Class C shares (GOOG) fell $18.53 or over 1.6% over the next two trading days to close at $1,138.82 on October 9, 2018, damaging investors. As a result, Alphabet's market capitalization declined by approximately $10 billion.

29. Then, on October 10, 2018, Senator Richard Blumenthal announced during a congressional hearing that he would be calling on the Federal Trade Commission ("FTC") to investigate Google in connection with its recent Google+ data privacy incident.

30. That same day, Senators Blumenthal, Markey and Udall sent a letter to the FTC urging it to investigate "whether the Google+ incident constitutes a breach of the company's consent decree or other commitments, and more broadly whether Google has engaged in deceptive acts and practices with respect to privacy." On this news, shares of Alphabet's Class A shares (GOOGL) fell $53.01 or over 4.6% to close at $1,092.16 on October 10, 2018. Shares of Alphabet's Class C shares (GOOG) fell $57.60 or over 5% to close at $1,081.22 on October 10,

2018, damaging investors. As a result, Alphabet's market capitalization declined by approximately $35 billion.

31. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common shares, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

32. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Alphabet common shares traded on the NASDAQ during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

33. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Alphabet common shares were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Alphabet or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

34. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

35. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

36. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the Exchange Act were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the financial condition and business of Alphabet;

- whether Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

- whether the Defendants caused Alphabet to issue false and misleading SEC filings during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and SEC filing

- whether the prices of Alphabet securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

37. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and

13

burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

38. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Alphabet shares met the requirements for listing, and were listed and actively traded on NASDAQ, a highly efficient and automated market;

- As a public issuer, Alphabet filed periodic public reports with the SEC and NASDAQ;

- Alphabet regularly communicated with public investors via established market communication mechanisms, including through the regular dissemination of press releases via major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

- Alphabet was followed by a number of securities analysts employed by major brokerage firms who wrote reports that were widely distributed and publicly available.

39. Based on the foregoing, the market for Alphabet securities promptly digested current information regarding Alphabet from all publicly available sources and reflected such information in the prices of the shares, and Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

40. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v.*

*United States*, 406 U.S. 128 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information as detailed above.

## COUNT I
### For Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder
### Against All Defendants

41. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

42. This Count is asserted against Defendants is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

43. During the Class Period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

44. Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;

- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

- engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Alphabet securities during the Class Period.

45. Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of Alphabet were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing

public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of Alphabet, their control over, and/or receipt and/or modification of Alphabet's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning Alphabet, participated in the fraudulent scheme alleged herein.

46. Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other Alphabet personnel to members of the investing public, including Plaintiff and the Class.

47. As a result of the foregoing, the market price of Alphabet securities was artificially inflated during the Class Period. In ignorance of the falsity of Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of Alphabet securities during the Class Period in purchasing Alphabet securities at prices that were artificially inflated as a result of Defendants' false and misleading statements.

48. Had Plaintiff and the other members of the Class been aware that the market price of Alphabet securities had been artificially and falsely inflated by Defendants' misleading statements and by the material adverse information which Defendants did not disclose, they

would not have purchased Alphabet securities at the artificially inflated prices that they did, or at all.

49. As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

50. By reason of the foregoing, Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchase of Alphabet securities during the Class Period.

## COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

51. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

52. During the Class Period, the Individual Defendants participated in the operation and management of Alphabet, and conducted and participated, directly and indirectly, in the conduct of Alphabet's business affairs. Because of their senior positions, they knew the adverse non-public information about Alphabet's misstatement of revenue and profit and false financial statements.

53. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Alphabet's financial condition and results of operations, and to correct promptly any public statements issued by Alphabet which had become materially false or misleading.

54. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Alphabet disseminated in the marketplace during the Class Period

concerning Alphabet's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Alphabet to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Alphabet within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Alphabet securities.

55. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Alphabet.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff, on behalf of himself and the Class, prays for judgment and relief as follows:

(a) declaring this action to be a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and designating plaintiff's counsel as Lead Counsel;

(b) awarding damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, together with interest thereon;

awarding plaintiff and the Class reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d) awarding plaintiff and other members of the Class such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: October _, 2018  Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

By:_____
Phillip Kim, Esq. (PK 9384)
Laurence M. Rosen, Esq. (LR 5733)
275 Madison Avenue, 34th Floor
New York, NY 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
          lrosen@rosenlegal.com

*Counsel for Plaintiff*